UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GUSTAVO RIVERA AVILA, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

VELASQUEZ CONSTRUCTION CORP., AND JAIRO VELASQUEZ JR., as an individual,

Defendants.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
22 CV 2606 (DG) (CLP)

**POLLAK**, United States Magistrate Judge:

On May 6, 2022, plaintiff Gustavo Rivera Avila ("plaintiff" or "Avila"), commenced this putative collective action against Velasquez Construction Corp. ("Velasquez Construction") and Jairo Velasquez Jr. ("Velasquez"), as an individual (collectively, "defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and the New York Labor Law ("NYLL") §§ 190 and 650, et seq., seeking unpaid overtime compensation and statutory penalties for wage notice and wage statement violations. (Compl.[1])

Despite receiving proper service in this action (see ECF Nos. 8, 11), defendants failed to answer or otherwise respond to the Complaint, and on October 19, 2022, defaults were entered against the defendants by the Clerk of Court. (ECF No. 14). Currently pending before this Court on referral from the Honorable Diane Gujarati, U.S. District Judge, is plaintiff's motion for default judgment. (ECF Nos. 16–18).

For the reasons set forth below, the Court finds that plaintiff's submissions in support of his standing under the NYLL wage statement and wage notice provisions and in support of his

---

[1] Citations to "Compl." refer to plaintiffs' Complaint, filed May 6, 2022. (ECF No. 1).

1

request for damages are deficient. Therefore, it is respectfully recommended that plaintiff's motion be denied without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that defendant Velasquez is the sole owner, day-to-day operator, and agent of Velasquez Construction, an active domestic business corporation, with a principal executive office and place of business located at 18-24 126th Street, College Point, NY 11356. (Compl. ¶¶ 8–11). Velasquez Construction is allegedly an enterprise engaged in interstate commerce within the meaning of the FLSA and has a gross volume of sales of at least $500,000. (Id. ¶ 18). According to plaintiff, defendant Velasquez possessed power over personnel and payroll decisions at Velasquez Construction, including the power to hire and fire employees, establish, set and pay their wages, and set their work schedules and hours; Velasquez is also responsible for maintaining all of the employment records. (Id. ¶¶ 12–16).

Plaintiff was employed by defendants as a construction worker from January 2020 until September 2020. (Id. ¶¶ 7, 17, 19). According to the plaintiff, he regularly worked a schedule of six days per week from 6:00 a.m. until approximately 6:00 p.m., for a total of 72 or more hours per week. (Id. ¶¶ 20–22). Plaintiff contends that he was paid a flat daily rate of approximately $160, without any regard for the number of hours that he worked each week and thus, even though he regularly worked 72 hours, he never received overtime pay at a wage rate of time and a half for hours worked over forty. (Id. ¶¶ 23, 24). Finally, the Complaint alleges that the defendants willfully failed to post notices of the minimum wage and overtime wage requirements, failed to provide plaintiff written notice of his wages, failed to maintain payroll records, and failed to provide plaintiff with written wage statements. (Id. ¶¶ 25–28).

The Complaint sets out four claims: 1) a violation of the FLSA for failure to pay overtime wages (Count 1); 2) a violation of the NYLL for failure to pay overtime wages (Count 2); 3) a violation of the NYLL for failure to provide plaintiff with wage statements upon each payment of his wages (Count 3); and 4) a violation of the NYLL for failure to provide plaintiff with written wage notices (Count 4).

On May 17, 2022, plaintiff served Velasquez Corporation with a copy of the Summons and Complaint through the Office of the Secretary of State of the State of New York. (ECF No. 8). After making several "prior diligent efforts to effect personal service" and after being granted an extension of time to serve defendant Velazquez, plaintiff served Velazquez on July 26, 2022, by affixing a copy of the civil cover sheet, Summons, and Complaint to the door of the residence located at 24447 Grand Central, Little Neck, NY 11362, which is defendant's "usual place of abode." (ECF No. 11). Plaintiff thereafter mailed a copy of those documents to defendant at that same address on July 29, 2022. (Id.) Despite proper service, defendants failed to appear or respond to the Complaint. On October 19, 2022, the Clerk of Court entered a default against both defendants. (ECF No. 14). Thereafter, on November 15, 2022, plaintiff filed his motion for default judgment. (ECF Nos. 16–18).

In compliance with Local Civil Rule 55.2(b), plaintiff attached to his motion, among other things, a copy of the Complaint, a copy of the Certificate of Default, and a copy of a Proposed Order of Judgment as exhibits to the Affirmation of Avraham Scher, Esq., in Support of the Motion for Entry of a Default Judgment. (ECF No. 17; see also ECF Nos. 17-1, 17-6, 17-9). Plaintiff also filed an affidavit of service indicating that on November 16, 2022, copies of the Notice of Motion, Affirmation in Support with Supporting Exhibits, and the Memorandum in

3

Support were mailed to defendants at their last known addresses in compliance with Local Civil Rule 55.2(c). (ECF No. 19).

On April 18, 2023, this Court issued an Order, giving defendants an opportunity to submit papers in response to plaintiff's motion for default judgment, warning defendants that plaintiff's motion for default judgment and request for damages would be decided based upon plaintiff's submissions unless defendants requested a hearing by May 19, 2023. (ECF No. 20). Plaintiff served a copy of that Order on defendants. (ECF No. 21). Since then, this Court has received no papers from defendants nor have defendants contacted the Court to request additional time.

## DISCUSSION

### I. Default Judgment

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-part procedure for entering a default judgment. Priestley v. Headminder, Inc., 647 F.3d 497, 504–05 (2d Cir. 2011); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993); see also Seaford Ave. Corp. v. ION Ins. Co., Inc., No. 22 CV 3449, 2022 WL 17669438, at *2 (E.D.N.Y. Dec. 14, 2022). The court clerk first enters a default by noting the defaulting party's failure to respond or appear. Fed R. Civ. P. 55(a). Second, if the defaulting party then fails to successfully vacate the entry of default pursuant to Rule 55(c), the appearing party may seek a default judgment. Fed R. Civ. P. 55(b). Where the amount of damages owed requires a judicial finding, a default judgment may be entered once the court has

conducted a hearing or made a referral to determine the question of damages. See Fed. R. Civ. P. 55(b)(2).

In determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an "extreme sanction" that "must remain a weapon of last, rather than first, resort." Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981); see also Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 137 v. Frank Torrone & Sons, Inc., No. 15 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018). While the Second Circuit has recognized the pressure on district courts "to dispose of cases that . . . delay and clog [their] calendar[s]" due to the litigants' "disregard of the rules," the Court instructs district courts to "maintain a balance between clearing [their] calendar[s] and affording litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubt[s] should be resolved in favor of the defaulting party." Id. Furthermore, "[Rule] 55(b) states that a judgment by default 'may' be entered under specified circumstances, not that it must." Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required "to supervise default judgments with extreme care to avoid miscarriages of justice"). Accordingly, plaintiff is not entitled to a default judgment as a matter of right, simply because the defendants are in default.

The court has significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including (1) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the

5

pleadings"); (2) "'whether the grounds for default are clearly established;'" and (3) "'the amount of money potentially involved.'" Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (quoting 10 Charles A. Wright, et al., Federal Practice and Procedure § 2685, at 423, 425–26 (2d ed. 1983)). The greater the amount of money involved, the more careful a court should be in entering a default judgment. See id. Additionally, a court considers whether the facts alleged in the complaint state a valid cause of action, whether there are unresolved questions regarding material issues of fact as to liability or damages, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (explaining that under Fed. R. Civ. P. 55(b)(2) "a district court has discretion . . . to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action"); 10A Charles A. Wright, et al., Federal Practice and Procedure § 2685 (4th ed. 2008) (Apr. 2023 update) (discussing the aforementioned factors).

In this case, it is beyond dispute that defendants are in default since they have failed to appear in this action, respond to the Complaint, or contest this motion for default judgment. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *1–2 (holding that defendant's default was "crystal clear" when it failed to oppose the plaintiff's motion for an entry of default after "fail[ing] to submit an answer or otherwise respond to the complaint"). Moreover, Vasquez Construction has failed to retain counsel or otherwise defend in this matter. See La Barbera v. Federal Metal & Glass Corp., 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009) (holding "a failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court *pro se*") (citing Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam), and Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir.

6

1983)), adopting report and recommendation, id. at 345–56.  Furthermore, the amount of damages that plaintiff seeks in this case is not large enough to give this Court pause.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, where plaintiff's request for damages ran "well into the millions of dollars" and plaintiff did not follow the procedure set out in Fed. R. Civ. P. Rule 55).  Thus, the Court proceeds to consider plaintiff's motion for default judgment.

II. Plaintiff's Claims

When a defendant defaults, the defendant is deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages."  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; see also Vierling Commc'ns GMBH v. Stroyls, No. 09 CV 6654, 2011 WL 5854625, at *1 (S.D.N.Y. Sept. 16, 2011), report and recommendation adopted, 2011 WL 5844158 (S.D.N.Y. Nov. 21, 2011); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded"); Deshmukh v. Cook, 630 F. Supp. 956, 959–60 (S.D.N.Y. 1986).  The Court, however, must review the allegations in the Complaint to determine if the elements of each claim have been adequately pleaded.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; see also Archbold v. Tristate ATM, Inc., Nos. 11 CV 5796, 12 CV 847, 2012 WL 3887167, at *3 (E.D.N.Y. Sept. 7, 2012), report and recommendation adopted, (E.D.N.Y. Mar. 15, 2013); see also Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (explaining that "it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief"), adopting report and recommendation, id. at 152–60.

7

A. <u>FLSA Overtime Claim</u>

The first issue is whether plaintiff has alleged the elements necessary to demonstrate that defendants violated the FLSA by failing to pay him proper overtime for all hours worked over 40 in a workweek. The FLSA provides that "no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).[2] Overtime is calculated at a rate of one and one-half times the employee's regular hourly pay for work performed in excess of 40 hours per week. <u>Id.</u>

To establish a claim under the FLSA, a plaintiff must prove the following: 1) the defendant is an "[e]nterprise engaged in commerce or the production of goods for commerce;" 2) the plaintiff is an "employee" within the meaning of the FLSA; and 3) the employment relationship is not exempted from the FLSA. <u>See</u> <u>Edwards v. Community Enters., Inc.</u>, 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing 29 U.S.C. §§ 206(a), 207(a), and <u>Tony & Susan Alamo Found. v. Secretary of Lab.</u>, 471 U.S. 290, 295 (1985)); <u>see also</u> <u>Rosenbaum v. Meir</u>, No. 20 CV 4520, 2023 WL 2305960, at *4 (E.D.N.Y. Mar. 1, 2023).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

---

[2] The statute of limitations under the FLSA is two years or three years where defendants' violations of the FLSA were willful. 29 U.S.C. § 255(a). Plaintiff alleges that defendants' violations of the FLSA were willful. (Compl. ¶¶ 31, 36, 46, 47). Crediting plaintiff with a three-year statute of limitations, plaintiff Avila's FLSA claims that accrued after January 2020 would all be timely given that the Complaint was filed on May 6, 2022.

8

29 U.S.C. § 203(s)(1)(A).  According to plaintiff, Velasquez Construction is a domestic corporation that has a gross annual volume of sales at least $500,000, subjecting it to the requirements of the FLSA.  (Compl. ¶ 18).  Plaintiff alleges that defendants were directly engaged in interstate commerce, given that they purchased tools and other goods "through the streams and channels of interstate commerce."  (Id.)  In the context of this default, where defendants have elected not to challenge plaintiff's claims, the Court accepts these uncontested allegations as true.

Plaintiff must also allege that he qualifies as an "employee" under the FLSA.  The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098.  An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d). 29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 206(a).

The Complaint alleges that defendant Velasquez was responsible for personnel, scheduling, and compensation decisions at Velasquez Construction and that Velasquez Construction employed plaintiff.  (Compl. ¶¶ 12–16, 19).  Thus, the Court finds that both defendants are "employers" within the meaning of the FLSA and the corporate defendant is an "enterprise engaged in commerce or in the production of goods for commerce."  Based on these allegations, plaintiff has established that defendants qualify as "employers."  It follows,

9

therefore, that plaintiff is an "employee" under the FLSA. There is nothing to suggest any basis for exempting the employment relationship at issue from the FLSA's provisions.[3]

In addition, plaintiff has alleged in the Complaint that during his period of employment, he routinely worked more than 40 hours a week, for which he received a fixed daily pay rate of $160 that did not vary with the number of hours worked. (Id. ¶ 23). Plaintiff argues that his pay was insufficient to comply with the overtime requirements under the FLSA. (See Pl.'s Mem.[4] at 14 (citing Perez v. Platinum Plaza 400 Cleaners, No. 12 CV 9353, 2015 WL 1881080, at *2 (S.D.N.Y. Apr. 24, 2015)) (holding that "[d]efendants have not overcome the presumption that a flat weekly salary is intended to compensate employees for forty hours of work per week" where "the record is completely devoid of any evidence of an agreement or understanding between [p]laintiffs and [d]efendants regarding what the weekly salary was intended to cover")). The Court finds that plaintiff has sufficiently set forth the necessary elements to state a claim under the FLSA for overtime violations.

B. NYLL Overtime Claim

Plaintiff also alleges that defendants violated the NYLL.[5] Like the FLSA, the NYLL requires that employees be compensated at an overtime rate of one and one-half times their regular hourly pay for time worked in excess of 40 hours in a week. See N.Y. Comp. Codes R. Regs. tit. 12, § 146-1.4.

To recover under the NYLL, the plaintiff must prove that he or she is an "employee" entitled to NYLL's protections and that the defendant is an "employer" as defined by the statute.

---

[3] See 29 U.S.C. § 213(a) setting forth the exemptions from the minimum wage requirements.
[4] Citations to "Pl.'s Mem" refer to plaintiff's Memorandum of Law in Support of plaintiff's Motion for Entry of a Default Judgment in Sum Certain against Velasquez Construction Corp, and Jairo Velasquez Jr., filed on November 15, 2022. (ECF No. 18).
[5] The statute of limitations for actions under the NYLL is six years. N.Y. Lab. Law § 663(3). Since plaintiff Avila's claims arose in 2020 the plaintiff's claims are timely and may be considered by the Court because the Complaint was filed on May 6, 2022.

10

See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407–09 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales made or business done in order to be subject to the law.  See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  Similar to the FLSA, an employee is simply defined, in part, as "any individual employed or permitted to work by an employer in any occupation."  N.Y. Lab. Law § 651(5).  Therefore, similar to the prior analysis under the FLSA, plaintiff fits within the definition of "employee" and defendants satisfy the definition of "employer" under the NYLL.  Furthermore, there does not appear to be any exception to the definition of "employee" that applies in this case.[6]

In the Complaint, plaintiff alleges that defendants failed to pay him overtime wages. (Compl. ¶¶ 24–23).  From in or around January 2020 until in or around September 2020, plaintiff alleges that he was paid a flat daily rate of approximately $160.00 per day without regard for the number of hours worked, and therefore was not paid overtime wages as required by the NYLL. (Id. ¶ 23).  Thus, based on the allegations in the Complaint, the Court finds that plaintiff has sufficiently set forth the necessary elements to state a claim under the NYLL for overtime violations.

### C. NYLL Wage Statement and Notice Claims

Plaintiff also alleges that defendants failed to maintain accurate recordkeeping of his hours worked, failed to provide him with a wage notice as required by NYLL § 195(1), and failed to provide him with wage statements containing the information required by NYLL § 195(3).  (Compl. ¶¶ 27–28; 53–58).  Section 195(1) requires that an employer provide a notice to

---

[6] See N.Y. Lab. Law § 651(5) (defining the exceptions).

the employee, at the time of hiring, that sets forth the rate of pay, allowances, and other specified information.  N.Y. Lab. Law § 195(1).  Section 195(3) requires that every employer provide to his or her employees "a statement with every payment of wages," listing various information, including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  N.Y. Lab. Law § 195(3).  In the Complaint, plaintiff alleges that defendants failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment, willfully failed to keep payroll records, failed to provide plaintiff with wage statements, and failed to provide plaintiff with a written notice of his applicable regular rate of pay and regular pay day, as prescribed by the NYLL.  (Compl. ¶¶ 25–28).

Although plaintiff has alleged that defendants violated Section 195(1) and 195(3) of the NYLL, plaintiff has not alleged that he suffered any injury as a result of these violations.  In TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2205 (2021), the Supreme Court explained that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."  Clarifying that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  Id.  Courts in this Circuit applying the lessons from TransUnion LLC v. Ramirez to the wage statement and wage notice provisions of the NYLL have required plaintiffs to identify the harm caused to them by these violations.  For example, in Francisco v. NY Tex Care, Inc., No. 19 CV 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar 28, 2022), the court declined to certify a class action based on the defendants' alleged improper wage notice and

12

statement policies because the plaintiff did not demonstrate standing to bring those claims. The court held that while failures to provide proper wage notice and statements

> may be technical violations of the NYLL, neither [p]laintiff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action, and the Supreme Court has made clear that a statutory violation alone, without a tangible injury or close parallel to a traditional cause of action, does not constitute an injury that can be recognized by the federal courts.

Id. (citing TransUnion LLC v. Ramirez, 141 S. Ct. at 2205).

Since the Supreme Court's decision in TransUnion LLC v. Ramirez, courts in this Circuit have required plaintiffs to allege that they suffered a specific injury as a result of defendants' noncompliance with these notice provisions, in addition to alleging defendants' noncompliance. Compare Stih v. Rockaway Farmers Market, Inc., No. 22 CV 3228, 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (finding plaintiff had pled a sufficient injury flowing from defendants' alleged violations of the NYLL wage notice and statement provisions where plaintiff alleged that the noncompliance "caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages, resulting in his underpayment"), with Belliard v. Tarnovsky, No. 20 CV 1055, 2023 WL 3004963, at *6 (S.D.N.Y. Mar. 6, 2023) (declining to award a plaintiff's request for statutory damages under the NYLL despite defendant's default because plaintiff "merely state[d] that he was not provided the new hire notice or wage statements" and failed to "assert any other facts describing the injury in fact caused by not receiving these documents"), report and recommendation adopted, 2023 WL 3304723 (S.D.N.Y. May 8, 2023), and Neor v. Acacia Network, Inc., No. 22 CV 4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023) (dismissing a complaint's claims for violations of the NYLL notice provisions for lack of standing where the

13

complaint did not "allege any harm stemming from a lack of accurate wage notices or statements").

Although plaintiff in the instant case alleged that he was not provided with the requisite notice and wage statements, he has not alleged any specific harm which flowed from defendants' noncompliance and therefore has not demonstrated his standing to bring these claims. In the absence of a showing that the plaintiff has standing to bring these claims, the Court may not award damages for these notice violations. However, given that the courts' rulings on standing and these provisions of the NYLL are fairly recent, the Court respectfully recommends that plaintiff be given the opportunity to amend his pleadings and demonstrate that he has standing to pursue these notice claims.

III. Damages

Having found that the Complaint contains enough well-pleaded allegations to demonstrate that defendants are liable for damages flowing from FLSA and NYLL overtime violations, the Court now must determine whether plaintiff has established his damages to a "'reasonable certainty.'" See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). While a defendant's failure to pay overtime violates both the FLSA and the NYLL, a plaintiff may only recover damages under one statute, as "double recovery of the same wages and related damages is not permitted." Gonzales v. Gan Israel Pre-Sch., No. 12 CV 6304, 2014 WL 1011070, at *11 (E.D.N.Y. Mar. 14, 2014), adopting report and recommendation, id. at *2–22. Courts will thus award damages under whichever statute would allow for greater recovery. See id. at *18–19.

14

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159 (2d Cir. 1992) (explaining plaintiff "'could only recover those damages arising from the acts and injuries pleaded and in this sense it was [plaintiff's] burden to show proximate cause'") (alteration in original) (internal quotation marks omitted) (quoting Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 70 (2d Cir. 1971), rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973)). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. Id. at 158; Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 83; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (collecting cases); 10A Charles A. Wright, et al., Federal Practice and Procedure § 2688.1 (4th ed. 2008) (Apr. 2023 update) (explaining that "[o]nce the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief"). The plaintiff usually must prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; see also Finkel v. Romanowicz, 577 F.3d 79, 83 n.6, 87 (2d Cir. 2009) (explaining that the decision to hold a hearing on the issue of damages before ruling on a default judgment is committed "to the sound discretion of the district court"). "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Parris v. Pappas, 844 F. Supp. 2d 271, 274 (D. Conn. 2012) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

A.  Plaintiff's Evidentiary Support For Damages

The Second Circuit has held, in the context of a default, that a hearing on damages "is not necessary when the district court relies 'upon detailed affidavits and documentary evidence, supplemented by the District Judge's personal knowledge of the record' to calculate a damage award." House v. Kent Worldwide Machine Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)). Although a hearing may not be necessary, "the district court cannot simply rely on the plaintiff's statement of damages; there must be a basis upon which the court may establish damages with reasonable certainty." Id.  "Magistrate judges and district courts have interpreted this to mean that, even when the defendant defaults and is not present to object, damages must be based on admissible evidence." Id.; e.g., Chadha v. Chadha, No. 16 CV 3739, 2020 WL 1031385, at *9 (E.D.N.Y. Mar. 2, 2020) (explaining that the court would not consider a ledger of expenses as evidence of plaintiffs' damages in the context of a default because "the ledger was not attached to any signed declaration attesting to its authenticity and accuracy; thus, the ledger is not admissible"), report and recommendation adopted, 2020 WL 5228812 (E.D.N.Y. Aug. 3, 2020).

Here, plaintiff has not provided the Court with any evidentiary support for his claim for damages. While plaintiff need not provide the Court with detailed records, here, the Court has not even been provided with a sworn statement or affidavit from the plaintiff setting forth the damages he claims to have suffered. See Chadha v. Chadha, 2020 WL 1031385, at *9 (denying an award of damages, despite defendants' default, because of "[p]laintiffs' failure to submit any admissible supporting documentary proof to substantiate a calculation of damages"). Instead, in support of his motion, plaintiff's counsel submitted his own affirmation setting forth his client's claimed damages and a damages chart, but with nothing from the plaintiff verifying any of the

16

information contained in counsel's affirmation. (See ECF No. 17 ¶ 29; ECF No. 17-8). As in the Chadha case, the damages assessments and the chart submitted were not attached to any signed declaration from the plaintiff "attesting to [their] authenticity and accuracy." Chadha v. Chadha, 2020 WL 1031385, at *9. At this time, the Court respectfully recommends that the motion for default judgment be denied without prejudice and that plaintiff be given an opportunity to supplement his papers and substantiate his claims for damages.

B. Pre-Judgment Interest

Although plaintiff requested to recover prejudgment interest in his Complaint (see Compl., Prayer for Relief), plaintiff makes no such request in his motion for default judgment. Therefore, it appears that plaintiff has abandoned this claim. If plaintiff seeks prejudgment interest, the Court respectfully recommends that the plaintiff be given an opportunity to clarify his position in any supplemental briefing.

C. Attorney's Fees and Costs

As with prejudgment interest, plaintiff sought attorneys' fees in his Complaint. (See Compl., Prayer for Relief). However, plaintiff does not request fees or costs in his motion for default judgment. Therefore, it appears that plaintiff has abandoned this claim. The Court respectfully recommends that the plaintiff be directed to clarify his position and if he seeks an award of fees and costs, he should supplement his papers accordingly.

CONCLUSION

In summary, it is respectfully recommended that plaintiff's motion for default judgment be denied without prejudice and that plaintiff be given leave: 1) to provide evidentiary support for his damages claims and 2) to amend his Complaint to allege an injury sufficient to support a finding of standing to recover under the NYLL wage statement and wage notice provisions. All

supplementary papers must be served upon defendants. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is directed to serve a copy of this Report and Recommendation promptly by certified mail on defendants and to provide the Court with proof of service.

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: June 30, 2023
      Brooklyn, New York

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York